IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| CARTOGRAF USA, INC., | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 3:22-cv-632–HEH |
| | ) | |
| CHOATE CONSTRUCTION | ) | |
| COMPANY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**
(Granting Motion to Dismiss and Closing Case)

This matter is before the Court on Respondent Choate Construction Company's ("Choate") Motion to Dismiss (the "Motion," ECF No. 9), filed on October 17, 2022. Choate moves the Court to dismiss Petitioner Cartograf USA, Inc.'s ("Cartograf") Petition to Vacate Interim and Final Arbitration Awards (the "Petition"). (ECF No. 1.) In Cartograf's Petition, Cartograf argues that this Court should vacate the Interim and Final Arbitration Awards (collectively, the "Arbitration Award") issued by the three-member Tribunal of the American Arbitration Association (the "Tribunal") because the Tribunal exceeded its authority and jurisdiction to arbitrate Phases 2 and 3 of Cartograf's Construction Contract with Choate. (Pet. ¶¶ 32–34.)

Choate, the prevailing party in the arbitration, seeks to dismiss Cartograf's Petition for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. (Mot. at 5–6.) In addition, because the same issues have been fully litigated and are pending final judgment in Chesterfield County Circuit Court (the

"Circuit Court"), Choate argues that this Court should abstain from exercising its jurisdiction under the *Colorado River* doctrine. (*Id.* at 8 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).)

The parties have filed memoranda supporting their respective positions. On February 28, 2023, the Court heard oral argument. For the reasons discussed below, the Court will grant Choate's Motion to Dismiss on abstention grounds.

## I. BACKGROUND

Cartograf is a United States subsidiary of Cartograf S.A. de C.V., a Mexican company that manufactures cardboard packages. (Pet. ¶ 6.) On October 11, 2019, Cartograf and Choate entered into a written agreement (the "Construction Contract") outlining three phases of construction for a manufacturing facility in which Choate would serve as a general contractor. (*Id.* ¶¶ 12–13.) The Construction Contract did not specify terms of construction for Phases 2 and 3. (*Id.* ¶ 13.) It required the parties to complete a change order[1] if or when (1) either party determined that Choate must perform additional work needed for Phase 1, or (2) the parties decided to include Phases 2 and 3 into the Construction Contract. (*Id.* ¶ 13.)

From October 2019 to March 2020, Choate oversaw construction on Phase 1 "and both parties generally complied with their contractual obligations." (*Id.* ¶ 16.) However, in March 2020, Cartograf began to face financial difficulties and "fell behind in its

---

[1] "The Construction Contract defines 'Change Order' as 'a written instrument prepared by the Architect and signed by the Owner [Cartograf], Contractor [Choate] and Architect stating their agreement upon' the additional work to be performed and any adjustments to the Contract Price or construction schedule." (Pet. ¶ 13 (quoting Constr. Contract § 7.2).)

2

payments to Choate." (*Id.*) In May 2020, Cartograf's Chief Executive Officer, Juan Páramo, met with Choate representatives and expressed "surprise" that the construction of the facility's roof and south wall remained incomplete. (*Id.* ¶¶ 18–19.) He orally instructed Choate to proceed with the work. (*Id.*) During the arbitration proceedings, Mr. Páramo "testified that he believed Choate was already obligated to undertake this work within Phase 1 and at no additional cost beyond the contract price." (*Id.* ¶ 19.) Choate, however, maintained that the roof and south wall construction constituted additional work outside of Phase 1 ("Purported Additional Work"). (*Id.*) Neither party ever executed a change order incorporating the Purported Additional Work. (*Id.*) Nevertheless, Choate performed the Purported Additional Work, as requested by Mr. Páramo. (*Id.* ¶ 20.)

On June 4, 2020, Choate informed Cartograf in writing of its intent to stop working on the project due to Cartograf's failure to make payments. (*Id.* ¶ 21.) Choate, however, continued working on the Purported Additional Work and sent a proposed change order to Cartograf, which neither party ever signed. (*Id.* ¶ 22.) On July 17, 2020, Choate advised Cartograf in writing that it would cease all construction work on the project, and on November 10, 2020, Choate notified Cartograf of its intent to terminate the Construction Contract. (*Id.* ¶¶ 23–24.)

Shortly thereafter, Choate filed a lawsuit in the Circuit Court, raising three counts against Cartograf: (1) enforcement of mechanics liens, (2) breach of contract, and, in the alternative, (3) *quantum meruit* and unjust enrichment under Virginia law. (*Id.* ¶ 24.) On

3

December 7, 2020, Cartograf filed an answer and motion to stay the dispute pending mediation and arbitration. (Resp't's Mem. in Supp. at 2, ECF No. 10 (citing Ex. A to Resp't's Mot. to Dismiss, ECF No. 10-1).) Cartograf's filing included an alternative Motion to Compel Mediation and Arbitration. (*Id.*) In addition to suing Cartograf, Choate named six defendants as interested parties due to their respective and separate mechanics liens on the property. (*Id.*)

On March 10, 2021, the Circuit Court entered an order titled "Order Granting Motion to Stay," which *inter alia*, stayed the matter "pending completion of the mediation and arbitration." (Ex. G to Resp't's Mem. in Supp., ECF No. 10-7.) Cartograf's counsel signed the Order as "Seen and Agreed." (*Id.*)

The parties conducted arbitration proceedings administered by the American Arbitration Association as was required by the arbitration provision in the parties' Construction Contract.[2] (Resp't's Mem. in Supp. at 3.) Choate filed its Statement of Claims against Cartograf and Choate filed its Statement of Defenses. (*Id.*) The parties now disagree as to whether Cartograf objected to the Tribunal's jurisdiction. Cartograf maintains that "[i]n both its pre-hearing and post-hearing briefs, [it] repeated its position

---

[2] Section 6.2 of the Construction Contract states:

> "[I]f the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement."

(Ex. 4 to Pet. at 26, ECF No. 1-4.)

4

that the Tribunal lacked jurisdiction to hear claims relating to the Purported Additional Work[.]" (Pet. ¶ 29.) Whereas Choate contends that "[n]otably, Cartograf's Statement of Defenses argues that the construction at issue fell outside the scope of the contract . . . [but] did not, however, object to the jurisdiction of the Arbitrator." (Resp't's Mot. to Dismiss at 3.)

On February 25, 2022, Cartograf moved the Tribunal to issue "an order estopping [Choate] from asserting claims for construction work that Choate concedes was not part of Phase I work under the Construction Contract." (Pet. ¶ 28 (quoting Ex. 9 to Pet., ECF No. 1-9).) Before the Tribunal, Cartograf maintained that Choate should not have performed the Purported Additional Work or work on Phases 2 or 3, and that such work is "outside the scope of this arbitration." (*Id.* ¶ 27.) Choate now argues before this Court that in Cartograf's motion, Cartograf "essentially admitted that it was aware of Choate's arguments about the contract when Cartograf filed its Statement of Defenses . . . but provided no explanation for its failure to raise its objection regarding the arbitrability of the claims[.]" (Resp't's Mem. in Supp. at 3.)

On March 10, 2022, the Tribunal announced that it would defer its ruling on arbitrability until after the close of the scheduled arbitration hearings, which took place on March 14–17, 2022. (*Id.* ¶ 28.) On July 6, 2022, the Tribunal entered an Interim Award in favor of Choate, concluding that Cartograf owed Choate $6,332,661.22, excluding interest, legal fees, costs, and expenses. (*Id.* ¶ 30.) In the Interim Award, the Tribunal addressed Cartograf's arbitrability arguments. (*Id.*) The Tribunal determined

5

that it had jurisdiction to render the award because "the Contract was modified by the [p]arties and the written change order requirement was waived by the [p]arties." (Resp't's Mem. in Supp. at 4.) The Tribunal concluded "that there was 'clear, unequivocal and convincing evidence' that the Change Order 1 work was authorized by the Owner's Representative." (Interim Award, Ex. 4 to Pet. at 17, ECF No. 1-4 (quoting *Cardinal Dev. Co. v. Stanley Const. Co., Inc.*, 497 S.E.2d 847, 851 (Va. 1998)).) The Tribunal noted that "the Owner's Representative and Choate mutually intended to modify and waive the written change order requirement of the Contract with respect to the Change Order 1 work performed by Choate." (*Id.*) The Tribunal also reasoned that it had jurisdiction over the matter because Section 15.3.2 of the parties' Construction Contract states that "any claim or dispute *arising out of or related to the Contract* is properly before [the] Tribunal" and the disputed issues in the matter clearly "arise[] out of or relate[] to the contract." (*Id.* at 27.) The Tribunal resolved that Cartograf owed Choate $2,065,681.50 for the Purported Additional Work. (*Id.*)

On September 9, 2022, the Tribunal entered a Final Award, incorporating by reference its Interim Award, and again resolving all issues in dispute between the parties in favor of Choate in the amount of $7,876,099.97, plus interest. (Final Award, Ex. 1 to Pet. at 8, ECF No. 1-10.) On September 12, 2022, Choate moved the Circuit Court to lift the stay, confirm the Arbitration Award, and enter judgment against Cartograf for the Complaint in the amount of $7,876,099.97, plus interest. (Pet. ¶ 31.)

6

On September 23, 2022, Cartograf filed its Petition to Vacate Interim and Final Arbitration Awards in this Court. In the Petition, Cartograf argues that the Tribunal exceeded its authority and jurisdiction under Fourth Circuit and Virginia law. (*Id.* ¶ 34). Specifically, Cartograf asserts that "[t]he Tribunal did not analyze, in the Interim Award or in any other ruling, whether the Construction Contract's arbitration clause 'clearly and unmistakably' overcame the presumption that the parties intended for a court to decide issues of arbitrability." (*Id.* ¶ 41 (citing *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999).) Cartograf contends that it "simply never consented to arbitrate Phase 2 or Phase 3 claims." (*Id.* ¶ 43.) Cartograf seeks vacatur under 9 U.S.C. § 10(a)(4) of the Federal Arbitration Act ("FAA"). (*Id.* ¶¶ 46–49.)

Three days later, on September 26, 2022, Cartograf filed its motion to oppose the Circuit Court's lift of the stay and confirmation of the Arbitration Award in the Circuit Court. (Resp't's Mem. in Supp. at 5.) In support of its motion before the Circuit Court, Cartograf attached its Petition in this Court (ECF No. 1) as the basis for its opposition.

On October 17, 2022, Choate filed its Motion to Dismiss Cartograf's Petition in this Court. In its Motion to Dismiss, Choate asserts that Cartograf's Petition should be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which relief could be granted. (Resp't's Mem. in Supp. at 5–6.) Specifically, Choate argues that this Court should abstain from exercising jurisdiction in this matter under the *Colorado River* doctrine because the same matter is pending in the Circuit Court. (Resp't's Mem. in Supp. at 8.) Choate further maintains that this Court should dismiss

Cartograf's Petition because Cartograf consented to the arbitrator's jurisdiction and because Cartograf's arbitrability arguments are time-barred and waived. (*Id.* at 13.)

Cartograf contends that the Court should not abstain from exercising its jurisdiction because the *Colorado River* factors do not support such a conclusion. (Pet'r's Opp'n Br. at 5, ECF No. 12.) Cartograf also posits that it did not consent to arbitrate claims for work outside of the Construction Contract, that its arguments are neither time-barred nor waived, and that it sufficiently pleaded its allegations in the Petition. (*Id.* at 9.)

On December 28, 2022, while Choate's Motion to Dismiss (ECF No. 9) was pending before this Court, the Circuit Court granted Choate's motion to lift the stay and confirmed the Arbitration Award, which is the same Arbitration Award at issue before this Court. (*See* Circuit Court Op. Letter, ECF No. 14-1.) In the Circuit Court's Opinion Letter, the Honorable M. Duncan Minton, Jr. extensively addressed the same matter currently being litigated before this Court. (*Id.*) Specifically, the Circuit Court analyzed and determined whether Cartograf consented to the jurisdiction of the Tribunal, the arbitrator had the authority to decide arbitrability, and Cartograf met its burden of proof to establish the Arbitration Award's validity under the FAA. (*Id.* at 1–4.)

The Circuit Court concluded that (1) Cartograf willingly and voluntarily subjected itself to the Tribunal's jurisdiction "through its own written consent at least three times" (*id.* at 1); (2) "the parties' contract and their agreed motion to [the Circuit Court] to send the matter to arbitration . . . delegated the authority to the [Tribunal] to decide

arbitrability by clear and unmistakable evidence" (*id.* at 3); and (3) Cartograf failed to sufficiently demonstrate the Arbitration Award was invalid under the FAA (*id.*). The Circuit Court held that the Tribunal did not exceed its jurisdiction, the stay should be lifted, and the Arbitration Award should be confirmed. (*Id.* at 4.)

## II. STANDARD OF REVIEW

"It is true, as a general rule, that our dual system of federal and state governments allow parallel actions to proceed to judgment until one becomes preclusive of the other." *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 340 (4th Cir. 2002). "[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992). Generally, "federal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Vulcan*, 297 F.3d at 340 (quoting *Colorado River*, 424 U.S. at 817). "However, when two competing parallel actions seek to apply the same law in deciding whether to enforce or vacate the same arbitration award, maintaining a harmonious relationship between the states and the federal government requires consideration of more complex principles than mere principles of duality." *Id.*

"Under the principles of *Colorado River*, federal courts may abstain from exercising their jurisdiction in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings and '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'

9

clearly favors abstention." *Vulcan*, 297 F.3d 332, 340–41 (4th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817); *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). "The decision whether to abstain necessarily requires resolving the tension between the federal court's obligation to exercise jurisdiction and the 'combination of factors counseling against that exercise.'" *Vulcan*, 297 F.3d at 341 (quoting *Colorado River*, 424 at 818–19; *see also MidAtlantic Int'l, Inc. v. AGC Flat Glass N. Am., Inc.*, 497 Fed. Appx. 279, 281 (4th Cir. 2012).

"Although the prescribed analysis is not a 'hard-and-fast' one in which application of a 'checklist' dictates the outcome, six factors have been identified to guide the analysis for *Colorado River* abstention." *Vulcan*, 297 F.3d at 341 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983)). Those factors include:

> (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others;
> (2) whether the federal forum is an inconvenient one;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action;
> (5) whether state law or federal law provides the rule of decision on the merits; and
> (6) the adequacy of the state proceeding to protect the parties' rights.

*Id.* (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 15, 19–27; *Colorado River*, 424 U.S. at 818–19; *McLaughlin*, 955 F.2d at 934–35). "At bottom, abstention should be the exception, not the rule, and it may be granted only when 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Id.* (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28).

10

## III. ANALYSIS

The Court agrees with Choate and concludes that under Fourth Circuit precedent and the *Colorado River* doctrine, this Court should abstain from exercising jurisdiction over this matter. Before turning to the *Colorado River* analysis, the Court will note the similarities between the matter at hand and the Fourth Circuit's case, *Vulcan*, 297 F.3d at 335. In *Vulcan*, the Fourth Circuit concluded that the district court abused its discretion when it failed to abstain from exercising its jurisdiction in a remarkably similar case. *Id.* There, a distributor of chemical products, Baker, sued a chemical firm, Vulcan, in California state court, claiming wrongful termination of a distribution agreement. *Id.* Following an arbitration award in favor of Baker, Vulcan brought a separate action in the United States District Court for the Western District of Virginia under the FAA, seeking to vacate the award. *Id.* The district court vacated the award and stayed judgment pending appeal. *Id.* On appeal, the Fourth Circuit held that (1) the district court had jurisdiction over the action, (2) Vulcan, which had successfully moved to compel arbitration in California pursuant to the parties' contract could not bring an independent action seeking to vacate the California award, and (3) the district court, in any event, should have abstained from exercising its jurisdiction under *Colorado River*. *Id.*

In both *Vulcan* and the case at hand, the petitioner had previously moved to compel arbitration in the state court and the state court granted the motion, staying further proceedings until the completion of the arbitration. *Id.* at 335. Also, in both cases, after the arbitrator ruled in favor of the respondent and awarded them millions of dollars in

11

damages, the petitioner filed an action in the district court to vacate the arbitration award, invoking the FAA. *Id.* As in this case, the state court in *Vulcan* then entered a judgment granting the respondent's motion to confirm the arbitration award and denying the petitioner's motion to vacate it. *Id.* However, unlike in this matter, the district court in *Vulcan* exercised its jurisdiction over the case and vacated the very award that the state court had previously confirmed. *Id.*

On appeal, the Fourth Circuit concluded that "because Vulcan filed a motion to arbitrate in California under the California Arbitration Act and a California court has confirmed the arbitration award—albeit in a judgment subject to appeal—the district court should have abstained from hearing and deciding the case" under *Colorado River*. *Id.* As elaborated below, this Court determines that under Fourth Circuit precedent and the *Colorado River* doctrine, this Court must abstain from exercising its jurisdiction.

In applying the first *Colorado River* factor to this case, Cartograf appears to concede that "Cartograf does not cite a federal question in its Petition, nor can it." (Resp't's Mem. in Supp. at 10.) "[T]he [United States] Supreme Court has explicitly stated that the FAA does not create federal question jurisdiction." *Crews v. S & S Serv. Ctr. Inc.*, 848 F. Supp. 2d 595, 598 (E.D. Va. 2012) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008)). The FAA seeks to enforce arbitration agreements as contractual matters, pursuant to the terms of the contract. *See Vulcan*, 297 F.3d at 343. The resolution of contractual obligations is a matter of state law and the enforcement of the mechanics liens, in this case, is governed by Virginia law. *See* Va.

12

Code § 43-1 *et seq.* While neither the Circuit Court nor this Court possess exclusive jurisdiction over issues pertaining to arbitration, state law governs the underlying dispute, and state law guides the determination of the arbitration motions. Moreover, "as in *Colorado River*, the [Circuit Court's] jurisdiction in this case created a potentiality for conflicting decisions regarding the arbitration award, a potentiality of which [Cartograf] was completely aware. In these circumstances, the first *Colorado River* factor is applied to favor abstention." *Vulcan*, 297 F.3d at 341 (quoting *Colorado River*, 424 U.S. at 819).

Under the second factor, the inconvenience of the federal forum in this case is inconsequential. On the one hand, this factor supports abstention in favor of the Chesterfield Circuit Court because the construction project underlying this dispute was located in Chesterfield County—the county in which the Circuit Court sits. On the other hand, the parties stipulated to and participated in arbitration in Richmond, which suggests that the parties consented to litigate the matter in Richmond. Either way, Chesterfield County is roughly a 30-minute drive from the Richmond United States District Court, which is hardly an inconvenience. Ultimately, because Chesterfield County and Richmond are relatively close and there is evidence to support the position that litigating the matter in either venue would be convenient, this factor is insignificant as to whether it favors abstention.

The desire to avoid piecemeal litigation heavily favors abstention. As Choate states, "Chesterfield County Circuit Court has been the home for this case since its inception." (Resp't's Mem. in Supp. at 11.) As stated above, all of the following

proceedings took place in the Circuit Court: Choate filed its original complaint, Cartograf filed its answer and motion to stay pending mediation and arbitration, Cartograf consented to the state's jurisdiction and requested that the Circuit Court enter an order compelling mediation and arbitration of the entire dispute, and the Circuit Court granted Cartograf's motion. The Tribunal then issued a Final Award resolving all issues in dispute between the parties in favor of Choate. Choate later moved the Circuit Court to lift the stay, confirm the arbitration award, and schedule a hearing to consider the validity of the liens filed on the property and determine the rights of the parties. When Choate filed its Motion to Dismiss in this matter, at least eight interested parties and six pending actions remained pending in the Circuit Court, where the resolution of Choate's arbitration award remains a key issue.

The Circuit Court is the court in which all of these actions are pending and from which Cartograf sought a stay to compel arbitration. That court stands as the appropriate forum to provide uniform and consistent rulings regarding the confirmation of the arbitration award, the validity of the mechanics liens, and the disposition of the property. As in *Vulcan*, "[t]he state court litigation would be appealed through the [state appellate court], while the arbitration decision would again be reviewed by the district court in Virginia." 297 F.3d at 342. Continuing federal jurisdiction in this matter would "mean[] that the parties would have to look to two forums for resolution of the dispute." *Id.* As in *Vulcan*, "[w]hile there may be cases in which piecemeal litigation is appropriate or necessary to enforce the [FAA], *see, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

213, 221 (1985), in this case, the [Chesterfield Circuit Court] eliminated any such possibility by diligently enforcing the parties' agreement to arbitrate. This factor, therefore, favors abstention." *Id.*

The fourth factor relating to the relevant order in which the courts obtained jurisdiction and the progress achieved in each action weighs heavily in favor of abstention. As Choate points out, "Cartograf does not plead any justification for filing this matter before this Court rather than proceeding with the matter already filed in the state court other than diversity jurisdiction." (Resp't's Mem. in Supp. at 12.) Choate initially filed its complaint in the Circuit Court nearly two years before Cartograf filed its Petition in this Court. Choate filed its motion to lift the stay and confirm the arbitration award nearly two weeks before Cartograf filed its Petition.

As to the fifth factor, as in *Vulcan*, "the rule of decision is not material." *Id.* Although Cartograf seeks relief under the FAA, Virginia courts have concurrent jurisdiction over the claim, "making the rule less significant." *Id.* In addition, both forums would apply the substantive law of Virginia as provided in the Construction Contract. Accordingly, the fifth factor is inconsequential.

Under the final factor, there is no evidence to suggest that Virginia courts are somehow inadequate to protect the parties' rights under the arbitration agreement. Indeed, this Court commends Judge Minton on his sound and thorough analysis. Judge Minton is a well-respected jurist, and if this Court were to retain jurisdiction in this matter, it would reach the same outcome articulated in Judge Minton's well-written and

well-reasoned Opinion Letter. In both the Circuit Court and this Court, Cartograf raised the same arguments challenging the validity of the Arbitration Award under the FAA. As in *Vulcan*, "[b]ecause both courts apply the same law and policy, this factor also favors abstention." *Id.*

Additionally, as in *Vulcan*, "it is important to note that a factor-by-factor analysis does not convey the synergistic effect of all the circumstances. This case was gladly litigated by both parties in [Chesterfield Circuit Court] and gladly arbitrated . . . before an agreed-upon arbitrator." *Id.* Under Virginia law, the parties "agreed that the arbitration award would be supervised by the [Virginia] courts. And the [Chesterfield Circuit Court] confirmed the arbitration award[.]"[3] *Id.* The Circuit Court was presented with all of the parties' positions—both for and against confirmation. *See id.* This Court believes that, as in *Vulcan*, Cartograf appears to have undertaken "a strategy to obtain a second opinion on the same issue from the district court" and "effectively sought to bypass the procedure that [Cartograf] had elected to follow, as well as to preempt or, if necessary, to reverse the state court that it had earlier employed in the matter." 297 F.3d at 343. The Fourth Circuit clearly condemned this strategy:

> To validate this strategy would undermine several traditionally valued tenets of wise judicial administration. The judicial system promises one trial, and, by enforcing doctrines of res judicata, collateral estoppel, and full faith and credit, seeks to prohibit relitigating the same issues when the first trial was

---

[3] While the Circuit Court's judgment in the entire case is not "final" in the sense that the Circuit Court must still address the mechanics liens on the property, this Court concludes that there was a final order as it pertains to the central matter at hand—namely, the validity of the Arbitration Award. Moreover, it is inevitable that the Circuit Court will issue its final order once it resolves the issues pertaining to the mechanics liens.

16

fair. Moreover, in our dual system of government, again through full faith and credit, . . . abstention, and other similar doctrines, respect is given by both state and federal governments to the courts of the other. At bottom, the federal-state system of courts seeks, in a cooperative effort, to give one fair trial on a given dispute, to respect each other, and thus to administer justice efficiently.

*Id.* As in *Vulcan*, "[t]his case presents a risk of undermining these tenets[.]" *Id.* This Court concludes that Cartograf violated its agreement to arbitration and corresponding litigation in the Circuit Court and that its efforts to circumvent that agreement, especially with the progress made by the Circuit Court, "calls loudly for the application of *Colorado River* abstention."[4] *Id.* Under Fourth Circuit precedent, Cartograf cannot and should not be permitted to seek a preemptive or second opinion from the federal court in this matter.

### III. CONCLUSION

For these reasons, the Court will grant Choate's Motion to Dismiss on abstention grounds. Cartograf's Petition will be dismissed with prejudice. This case will be closed.

/s/
_____
Henry E. Hudson
Senior United States District Judge

Date: April 7, 2023
Richmond, Virginia

---

[4] Additionally, if a reviewing court were to adopt the viewpoint articulated in Judge Herlong's concurrence in *Vulcan*, this Court would nevertheless conclude that it lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. *Vulcan*, 297 F.3d at 344. "The *Rooker-Feldman* doctrine provides that 'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" *Id.* (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)). "In making this determination, one pivotal question is whether 'the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim.'" *Id.* (quoting *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 202 (4th Cir. 2000)). As in *Brown & Root*, the FAA was raised before the state court and the state court's decision precedes the federal district court's decision. Thus, even under the *Rooker-Feldman* doctrine, this Court would be divested of jurisdiction. *See id.*